UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EMILEE SCHOFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| | ) | |
| ALDI, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S COMPLAINT WITH DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, Emilee Schofield ("Plaintiff" or "Schofield"), files her Complaint against the Defendant, ALDI, Inc. ("Defendant" or "ALDI"), and states the following:

**NATURE OF THE CLAIMS**

1. This is an action for monetary damages and injunctive relief, pursuant to Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq*. (hereinafter "ADA"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq*. (hereinafter "ADEA"), and the Illinois Human Rights Act, 775 ILCS 5/1-101 (hereinafter "IHRA") to redress Defendant's unlawful employment practices against Plaintiff, including Defendant's intentional and systematic discrimination based on Plaintiff's disability and age, lawful exercise of her rights under the ADA, ADEA, and in retaliation for Plaintiff's protected requests.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) as this action involves federal questions regarding the deprivation of Plaintiff's rights under the ADA and ADEA.

3. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including Defendant's unlawful employment practices alleged herein, occurred in this District.

## THE PARTIES

5. Plaintiff, Schofield, is a citizen of the United States was at all times material, a resident of the State of Illinois.

6. Defendant, ALDI, is a For-Profit Corporation operating within this district at its 1100 E. Warrenville Road, Naperville, Illinois 60563 location.

7. Defendant is an employer as defined by the laws under which this action is brought and employs the requisite number of employees.

## PROCEDURAL REQUIREMENTS

8. Plaintiff has complied with all statutory prerequisites to filing this action.

9. On January 22, 2024, Plaintiff dual-filed a timely claim with the Illinois Department of Human Rights Commission ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"), against Defendant, satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e), based on disability and age discrimination and retaliation.

2

10. Plaintiff's EEOC charge was filed within three hundred (300) days after the alleged unlawful employment practices occurred.

11. On March 5, 2024, the EEOC issued a Notice of Right to Sue.

12. The Parties entered a Tolling Agreement extending Plaintiff's statute of limitation through November 5, 2025.

13. Plaintiff now timely files her complaint.

## FACTUAL ALLEGATIONS

14. Plaintiff began her employment Defendant in March 2018 and worked as a full-time employee working or exceeding 40 hours per week.

15. At all times material, Defendant employed fifteen (15) or more employees and qualified as an employer within the meaning of the ADA, ADEA, and IHRA.

16. Plaintiff is over 40 years of age.

17. At the time of her separation from Defendant, Plaintiff held the position of Risk Analyst II.

18. At all relevant times Plaintiff suffered from a disability.

19. Defendant was aware at all times material and had been aware of Plaintiff's disabilities since Plaintiff began her employment with Defendant.

20. Plaintiff's disabilities substantially limited one or more of her major life activities and constitute a disability under applicable law.

21. Plaintiff was able to perform essential job functions at all times during her employment with Defendant.

22. Upon hire, Plaintiff made Defendant's management team aware that she suffered from a qualifying disability as defined by the ADA and IHRA.

23. Plaintiff performed successfully in her role and without issue for several years until January 2023, when Darla Lacan-Bradley was promoted to a Lead Supervisor role.

24. Promptly after Ms. Lacan-Bradley's promotion to Lead Supervisor, Plaintiff disclosed her disability to Ms. Lacan-Bradley.

25. Immediately after Plaintiff's disclosure of her disability, Ms. Lacan-Bradley began weaponizing this information against Plaintiff for several months.

26. For example, Ms. Lacan-Bradley began micromanaging and harassing Plaintiff so severely that she triggered the symptoms of Plaintiff's disability on several occasions, causing Plaintiff to suffer a full attack.

27. Immediately after this incident, Ms. Lacan-Bradley confronted Plaintiff regarding her email tonality and accused Plaintiff of being "hostile" towards a vendor.

28. Plaintiff apologized to the vendor who was confused by the apology and confirmed she [the vendor] did not find the tone to be offensive.

29. This marked the beginning of a pattern of retaliation following Plaintiff's disability flare-ups suggesting a strong causal connection between Plaintiff's disability and Defendant's discriminatory animus.

30. In February 2023, as a reasonable accommodation Plaintiff requested an extended lunch break on Thursdays to attend appointments with her therapist. Although this reasonable accommodation was approved, Ms. Lacan-Bradley would habitually schedule meetings during Plaintiff's Thursday lunch break and then demand Plaintiff to reschedule her therapist appointment. Resulting in Defendant's failure to provide any reasonable accommodation or otherwise engage in the interactive process.

31. Although initially approved, Ms. Lacan-Bradley would intentionally prevent Plaintiff from utilizing the accommodation.

32. Ms. Lacan-Bradley's actions in response to Plaintiff's accommodation requests demonstrate a causal connection between Plaintiff's protected activity and the ensuing retaliation.

33. As Plaintiff began to work on the task, Plaintiff inquired about the vetting policy as Ms. Lacan-Bradley often improperly added vendors without following Defendant's policy.

34. Ms. Lacan-Bradley immediately retaliated against Plaintiff by reassigning the project to another employee, Monika [last name unknown].

35. Ms. Lacan-Bradley displayed similar behavior in or around May 2023 as she instructed Plaintiff to revamp the attorney and adjuster roundtable format.

36. Plaintiff completed the task however, during a staff meeting just a few weeks later, Monika approached Plaintiff and stated that Ms. Lacan-Bradley asked her to revamp the roundtables as well.

37. Plaintiff escalated her concerns about the disparate and discriminatory treatment to Directors Clayton Dombrowski and Andrew Starrenburg. No action was taken.

38. Plaintiff concluded that enduring Ms. Lacan-Bradley's retaliatory offensive conduct had become a condition of her employment with Defendant.

39. On or about July 14, 2023, Plaintiff was again confronted by Ms. Lacan-Bradley and Risk Manager Jodee Adams, who alleged that a vendor complained about Plaintiff and stated that Plaintiff would be required to attend a "Tactful Communications" class.

40. Plaintiff's disability was again triggered and Plaintiff suffered an attack shortly after the confrontation.

41. Plaintiff requested evidence of the complaint allegedly made against her but was never provided with any.

42. On July 18, 2023, Plaintiff sent an email to Defendant's benefits department inquiring about further accommodation for her disability and the options available including

medical leave.

43. Due to the nature of Plaintiff's disability, Plaintiff became symptomatic during exchanges with Defendant's benefits department representative who failed to engage any further in the interactive process with Plaintiff.

44. On September 25, 2023, Ms. Lacan-Bradley issued Plaintiff a baseless write-up in an attempt to create pretext for Plaintiff's termination.

45. The temporal proximity of Plaintiff's disability "flare-ups" and the retaliatory conduct by Ms. Lacan-Bradley raises significant concerns.

46. The temporal proximity of the short interval between Plaintiff's request for reasonable accommodations and Ms. Lacan-Bradley's retaliatory actions appears particularly suspect.

47. Defendant failed to provide Plaintiff a signed copy of the write-up and moreover, issued Plaintiff the written discipline outside of its own progressive discipline policy which requires verbal warnings first.

48. After notification of the September 25, 2023 write-up, Plaintiff discussed the specifics of an email with Ms. Lacan-Bradley and Risk Manager Lisa Rossi, wherein Plaintiff explained in detail that she was unable – at the moment that day – to send emails as Plaintiff was in the midst of an anxiety attack.

49. On or about September 29, 2023, Ms. Lacan-Bradley approached Plaintiff and once again accused Plaintiff of being "hostile" in Plaintiff's email communications.

50. Ms. Lacan-Bradley informed Plaintiff that she would be required to participate in daily meetings aimed at addressing her communication style specifically to make her emails "fluffier," as ambiguously described by Ms. Lacan-Bradley.

51. This directive constituted direct age-based discrimination, as the concept of "fluffy

communications," emails that emphasize lighthearted, overly informal language, is a trend commonly associated with younger, "Gen Z" employees, particularly in professional settings.

52. Notably, Plaintiff was never provided with evidence of a vendor or customer complaint regarding her email communications.

53. Moreover, the proposed meetings to "fluff" Plaintiff's emails never transpired; instead, Plaintiff was abruptly terminated on or about October 16, 2023.

54. The discrimination and retaliation Plaintiff was subjected to was perpetrated, in part, by one of Defendant's employees with direct supervisory authority over Plaintiff.

55. Defendant knew or should have known of the discrimination and retaliatory conduct because its supervisor(s) and members of management observed it and/or participated in it.

56. The unlawful employment practices complained of in the above-mentioned paragraphs were intentional.

57. The unlawful employment practices complained of in the above-mentioned paragraphs were done with malice or with reckless indifference to the statutory and/or federally protected rights of Plaintiff.

58. Plaintiff has been damaged by Defendant's illegal conduct.

59. Plaintiff has retained the services of undersigned counsel and has agreed to pay said counsel reasonable attorneys' fees.

### Count I: Disability Discrimination under the ADA

60. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-59 above.

61. At all times material, Defendant employed fifteen (15) or more employees and qualified as an employer within the meaning of the ADA.

62. At all times relevant to this action, Plaintiff was a qualified individual with a

disability within the meaning of the ADA.

63.     Plaintiff has an actual disability, has a record of being disabled, and/or is perceived as being disabled by Defendant.

64.     Plaintiff was able to perform the essential functions of her job at the time of her termination.

65.     Defendant is prohibited under the ADA from discriminating against Plaintiff because of her disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

66.     Defendant intentionally discriminated against Plaintiff and subjected Plaintiff to disparate and discriminatory treatment throughout her employment based on her disability, thereby resulting in Plaintiff's unlawful termination.

67.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer, lost wages, lostbenefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self- confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

68.     Defendant's unlawful conduct in violation of the ADA was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of exemplary and/or punitive damages.

<u>**Count II: Failure to Accommodate in Violation of the ADA**</u>

69.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-59 above.

70.     At all times relevant to this action, Plaintiff was a qualified individual with a

disability within the meaning of the ADA because Plaintiff has an actual disability, has a record of being disabled, and/or is perceived as being disabled by Defendant.

71.     Plaintiff was able to perform the essential functions of her job at the time of her termination.

72.     Defendant is prohibited under the ADA from discriminating against Plaintiff because of her disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

73.     Defendant is required under the ADA to engage in the interactive process and provide reasonable accommodations for Plaintiff's disability.

74.     Defendant failed to reasonably accommodate Plaintiff or engage in the interactive process.

75.     Defendant's discriminatory conduct, in violation of the ADA, has caused Plaintiff to suffer a loss of pay, benefits, and prestige.

76.     Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

77.     Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages.

### Count III: Retaliation in Violation of the ADA

78.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-59 above.

79.     At all times material, Defendant employed fifteen (15) or more employees and qualified as an employer within the meaning of the ADA.

80.     At all times relevant to this action, Plaintiff was a qualified employee within a disability under the ADA.

81. Defendant intentionally retaliated against Plaintiff based on her request for reasonable accommodations and use of protected medical leave pursuant to her disability.

82. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

83. Defendant's unlawful conduct in violation of the ADA was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of exemplary and/or punitive damages.

### Count IV: Age Discrimination in Violation of the ADEA

84. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraph 1-59 above.

85. Plaintiff is an individual over the age of 40 and is therefore a member of a protected class under the ADEA.

86. At all times relevant, Defendant was an "employer" within the meaning of the ADEA, employing at least twenty (20) or more employees.

87. Plaintiff was qualified for the position held and was performing job duties satisfactorily.

88. Plaintiff was subjected to adverse employment action, including but not limited to harassment, retaliation, and termination on the basis of age.

89. Younger employees with similar or lesser qualifications were treated more favorably than Plaintiff under similar circumstances.

90.     Defendant's actions were willful and in reckless disregard of Plaintiff's rights under the ADEA.

91.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic loss, emotional distress, and other damages recoverable under the ADEA.

**Count V: Disability Discrimination in Violation of the IHRA**

92.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraph 1-59 above.

93.     At all relevant times being relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the IHRA.

94.     Defendant is prohibited under the IHRA from discriminating against Plaintiff because of Plaintiff's disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

95.     Defendant intentionally discriminated against Plaintiff and subjected Plaintiff to disparate and discriminatory treatment throughout her employment based on her disability, thereby resulting in Plaintiff's unlawful termination.

96.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic loss, emotional distress, and other damages recoverable under the IHRA.

**Count VI: Failure to Accommodate in violation of the IHRA**

97.      Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-59 above.

98.     At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the IHRA because Plaintiff has an actual disability, has a record

of being disabled, and/or is perceived as being disabled by Defendant.

99. Plaintiff was able to perform the essential functions of her job at the time of her termination.

100. Defendant is prohibited under the IHRA from discriminating against Plaintiff because of her disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

101. Defendant is required under the IHRA to engage in the interactive process and provide reasonable accommodations for Plaintiff's disability.

102. Defendant failed to reasonably accommodate Plaintiff or engage in the interactive process.

103. Defendant's discriminatory conduct, in violation of the IHRA< has caused Plaintiff to suffer a loss of pay, benefits, and prestige.

104. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic loss, emotional distress, and other damages recoverable under the IHRA.

### Count VII: Retaliation in Violation of the IHRA

105. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraph 1-59 above.

106. At all times relevant to this action, Plaintiff was a qualified employee within a disability under the IHRA.

107. Defendant intentionally retaliated against Plaintiff based on her request for reasonable accommodations and use of protected medical leave pursuant to her disability.

108. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic loss, emotional distress, and other damages recoverable under the

IHRA.

## Count VIII: Age Discrimination in Violation of the IHRA

109. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-59 above.

110. Plaintiff is an individual over the age of 40 and is therefore a member of a protected class under the IHRA.

111. Plaintiff was qualified for the position held and was performing job duties satisfactorily.

112. Plaintiff was subjected to adverse employment action, including but not limited to harassment, retaliation, and termination on the basis of age. (Not sure if you want me to change the language).

113. Younger employees with similar or lesser qualifications were treated more favorably than Plaintiff under similar circumstances.

114. Defendant's actions were willful and in reckless disregard of Plaintiff's rights under the IHRA.

115. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic loss, emotional distress, and other damages recoverable under the IHRA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, requests this Honorable Court:

a) Enter judgment requiring Defendant to pay back wages and back benefits found tobe due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial, punitive damages, liquidated damages, and prejudgment interest thereon;

b)      Grant Plaintiff her costs and an award of reasonable attorneys' fees (including expert fees); and

c)Award any other and further relief as this Court deems just and proper.

### **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all triable issues herein.

Respectfully Submitted:
**/s/ Lisa Scheibly**
Lisa Scheibly, Esq.
ARDC. 6341923
Spielberger Law Group
4890 W. Kennedy Blvd.
Suite 950
Tampa, Florida 33609
T: (800) 965-1570
F: (866) 580-7499
lisa.scheibly@spielbergerlawgroup.com

*Counsel for Plaintiff*